| | | |
|---|---|---|
| HENMAN ENGINEERING AND MACHINE, INC., <br> THOMAS HENMAN, SR, <br> THOMAS HENMAN, JR, <br><br> Plaintiffs, <br><br> v. <br><br> JD NORMAN MUNCIE, LLC, <br> JD NORMAN WINCHESTER, LLC, <br> JD NORMAN MUNCIE BUILDING, LLC, <br> JD NORMAN WINCHESTER BUILDING, LLC, <br> JUSTIN D NORMAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:17-cv-00701-RLM-TAB |

## ORDER ON DEFENDANTS' MOTION TO AMEND COUNTERCLAIM AND DEFENDANTS' MOTION TO STAY

### I. Introduction

In January of 2016, Plaintiffs and Defendants entered into an asset purchase agreement through which Defendants would buy Henman Engineering & Machine, Inc. from Plaintiffs. The parties agreed to a base purchase price of $11 million, which was paid at the closing. Because Henman Engineering's 2015 earnings were not then known, the asset purchase agreement included provisions to adjust the price after Plaintiffs' accounting firm determined the final earnings before interest, taxes, depreciation, and amortization ("EBITDA"). Plaintiffs bring this action alleging Defendants owe more than $4.4 million based on the final EBITDA. Defendants deny they owe anything and countersue for $4.8 million, claiming fraud, breach of contract, and unjust enrichment.

This order addresses two motions: Defendants' motion for leave to file an amended counterclaim against Plaintiffs [Filing No. 59], and Defendants' motion to stay the proceedings

and compel resolution by an independent accounting firm. [Filing No. 60.] Defendants' proposed amendment gets rid of several large chunks of their counterclaim, but it also changes the basis of one of the key counterclaims. Defendants' motion to stay seeks to exercise a dispute resolution provision of the agreement that would put the case on hold until an independent accounting firm reviews the work of Plaintiffs' accounting firm. Both of these motions come very late in the game. In order for these motions to be resolved, the Court granted Defendants' motion to postpone the final pre-trial conference and corresponding deadlines, as well as Defendants' motion to vacate the December 3, 2018, trial date. [Filing No. 76.]

As discussed below, the Court grants Defendants' motion for leave to amend [Filing No. 59] because the amendment removes large portions of Defendants' counterclaim and Plaintiffs' have time to conduct additional discovery if needed. Defendants shall file and serve their amended counterclaim within seven days, and, if necessary, the parties shall file a joint motion within 14 days proposing a timeline for any additional discovery. The Court denies Defendants' motion to stay [Filing No. 60] because Defendants waited too long to try to exercise the dispute resolution provision and because legal issues would need to be resolved before the provision could be exercised.

## II. Discussion

### a. Leave to Amend

Defendants seek leave to amend their counterclaim to prune their arguments. Defendants argue that discovery shows they need to narrow their counterclaims. Defendants seek to eliminate some claims altogether, reduce the amount of damages, and adjust one of the claims from breach of contract through fraud to breach by failing to abide by generally accepted accounting principles. Plaintiffs object to the amendments on several grounds, but the key

contention is that changing the fraud claim to a simple breach claim is a significant shift that amounts to replacing the fraud claim with an entirely new claim and theory of the case.

Contrary to Defendants' arguments, they must show good cause to amend the pleadings at this late stage. The Court set a deadline to amend the pleading in its scheduling order, and parties must show good cause to amend the scheduling order. Fed. R. Civ. P. 16(b)(4). The Seventh Circuit has repeatedly held that the heightened standard to amend a scheduling order trumps the liberal standard from Rule 15(a)(2) for amending the pleadings. *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). Because the deadline to amend the pleadings has passed, Defendants' necessarily seek to amend the Case Management Plan and must, at least, meet the heightened standard from Rule 16.[1]

Defendants assert they are amending their counterclaim "for one simple purpose: to streamline the issues for trial in an effort to conserve resources of the parties' and the Court by conforming their claims to the evidence developed through discovery." [Filing No. 66, at ECF p. 2.] Defendants want to entirely eliminate their claims of fraudulent inducement and breach of contract due to failure to maintain equipment and machinery; to drop a portion of a breach claim regarding a dispute over accounts payable; and to reduce their claimed damages from $4.8 million to $2.8 million, which is a more than 40% reduction. Purging such a large portion

---

[1] There is some precedent for applying Rule 6(b)'s excusable neglect standard when a party seeks leave to amend in order to extend a deadline after it has passed. *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 463–64 (7th Cir. 2005). However, neither side makes arguments concerning this higher bar and it has primarily been applied to discovery deadlines. *Compare Flint*, 791 F.3d at 768 *with Adams*, 742 F.3d at 734.

of the dispute provides good cause for amending the complaint, and Plaintiffs agree with respect to these amendments.

Plaintiffs disagree, however, that another of Defendants' amendments narrow the counterclaim, and instead argue the change substitutes a new, futile counterclaim. Both the counterclaim and the proposed amended counterclaim allege Plaintiffs breached the representations and warranties of the asset purchase agreement by inflating Plaintiffs' accounts receivable, which made Plaintiffs appear to have more money coming in than they actually did, driving up the final EBITDA, and correspondingly, the final purchase price. The current counterclaim alleges Plaintiffs inflated the accounts receivable through fraud. The amendment gets rid of the fraud aspect and claims the "inflations of [the accounts receivable] were primarily the result of bad debt expense and invoices that were either uncollectable or had significant risk of being uncollectable . . . that were nevertheless included . . . as viable and appropriate [accounts receivable]." [Filing No. 59-1, at ECF p. 9.] In other words, Defendants' new theory is that Plaintiff inflated the final EBITDA by failing to adhere to generally accepted accounting principles.

Plaintiffs argue this amendment should not be permitted for three reasons: (1) it is untimely and the product of undue delay, (2) it is prejudicial to Plaintiffs, and (3) it is futile. Defendants argue the amendment is neither untimely nor unduly delayed because they are merely adjusting their counterclaims after a long discovery process where they and their experts reviewed thousands of pages of documents. Plaintiffs counter that Defendants had all the information they needed regarding the allegedly bad debt or uncollectable accounts over two years ago, so there is no reason for Defendants to just now be pivoting to the theory in the proposed amended complaint. In hindsight, Defendants could have expressly included both

potential sources of EBITDA inflation from the beginning. However, it is not uncommon for parties to reach a new understanding of their case after all the evidence is obtained from discovery. After all, that is why this process is called "discovery." While the delay is unfortunate, it is outweighed by the significant reduction in the issues to be resolved.

Plaintiffs' concerns about prejudice are not sufficient to deny the amendment. Many of Plaintiffs' concerns can be cured through additional discovery. Plaintiffs argue they did not get a chance to ask Defendants' two principals, Justin D. Norman and Gary Wilhite, about the theory that the accounts receivable were inflated through improper accounting practices because Defendants did not advance the theory until after their depositions. Though additional depositions seem unnecessary, Plaintiffs can ask additional questions through written discovery. Plaintiffs also point to Defendants' responses to Interrogatory No. 11 and Request for Production No. 17. [Filing No. 63, at ECF pp. 7-8.] These responses are not adequate in light of the reshaping of Defendants' counterclaim theory.[2] However, these insufficiencies can be cured though limited additional discovery. The Court has vacated the trial date and related deadlines, eliminating what likely would have been a prejudicial time crunch for Plaintiffs to conduct additional discovery by the previously set December 3 trial. The delayed trial provides ample time for additional discovery.

---

[2] Interrogatory No. 11 sought every objection Defendants made to the final EBITDA, but Defendants declined to produce them, arguing in part that the objections are outside the scope because their counterclaim is based on fraud, which did not require an objection. [Filing No. 63-8, at ECF pp. 2-3.] As discussed below, whether Defendants properly objected under the agreement is now relevant. Similarly, Defendants responded to Request for Production No. 17 in part by arguing that post-closing calculations of the final EBITDA were irrelevant and disproportionate to the needs of the case. [Filing No. 63-9, at ECF p. 2.] Defendants new inflation theory largely rests on the final EBITDA calculation. The Court recognizes that Defendants object to these requests on other grounds. Nonetheless, Defendants shall revisit their objections and provide Plaintiffs with updated responses within 14 days or as otherwise agreed by the parties.

Plaintiffs' other claims of prejudice are unpersuasive. Plaintiffs argue that they lost the chance to file a motion for partial summary judgment on Defendants' new theory, but summary judgment outcomes are uncertain and thus any prejudice is undeterminable. Plaintiffs also emphasize the length and expense of this litigation, noting they have already spent tens of thousands of dollars in response to the fraud claim and do not want to spend even more on Defendants' new approach. Plaintiffs further note that Thomas Henman, Sr. is 80 years old and would like to see this litigation end. These are legitimate concerns, but they are the unfortunate costs of litigation.

Plaintiffs next argue that the amendment is futile based on their interpretation of the asset purchase agreement. A proposed amendment is futile "if it would not withstand a motion to dismiss." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001). In a motion to dismiss, the Court can determine the meaning of contract provisions as a matter of law only if the Court finds their meaning is unambiguous. *See INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 498 (7th Cir. 2009) ("If the district court determines that the contract is unambiguous, it may determine its meaning as a matter of law.") (quoting *McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000)); *Omicron Safety & Risk Techs., Inc. v. UChicago Argonne, LLC*, 181 F. Supp. 3d 508, 510 (N.D. Ill. 2015).

The proposed amendment is not futile because the disputed terms of the asset purchase agreement are ambiguous, making resolution of the dispute under the standard for a motion to dismiss dubious. Under the asset purchase agreement, Plaintiffs were to prepare a "certificate" containing a final EBITDA calculation. The asset purchase agreement gave Defendants 30 days to object in writing to the final EBITDA based on accounting principles. Plaintiffs argue the amendment is futile because Defendants' new inflation theory is based on EBITDA accounting

principles, and Defendants failed to object within the 30-day window. Defendants respond that the 30-day window to object was never triggered because Plaintiffs did not provide the final EBITDA in a "certificate." It is undisputed that the agreement did not define "certificate," and Plaintiff even argues that the term is so ambiguous that it is unenforceable. Accordingly, this issue would seem ill suited for determination as a matter of law under the standard for a motion to dismiss. Thus, Plaintiffs' futility argument falls short.

### b. Stay

Defendants move to stay the proceedings so that an independent accounting firm can review Plaintiff's determination of the final EBITDA. The agreement's remedy for an objection to the final EBITDA is for the parties to negotiate in good faith for 30 days, and if the parties fail to resolve the dispute, "the items in dispute may be referred by either such party for determination as promptly as practicable to the Independent Accounting Firm" jointly engaged by both Plaintiffs and Defendants. [Filing No. 60-1, at ECF p. 24 (Asset Purchase Agreement Section 4.4(b)).]

The parties' arguments center on the same provisions as Plaintiffs' argument that the amendment is futile, discussed immediately above. Plaintiffs argue that Defendants failed to object to the final EBITDA in writing within the 30-day window provided in the agreement, and Defendants argue that the 30-day clock never began to run because Plaintiffs failed to provide the final EBITDA in a "certificate." The asset purchase agreement does not define "certificate" and neither Plaintiffs nor Defendants argue that it is a standard accounting term. The agreement uses the undefined term to describe the form of other required productions, including the Revised Closing Statement that Defendants were obliged to provide Plaintiffs 120 days after the closing. [*Id.* at ECF p. 22 (Asset Purchase Agreement Section 4.3(c)(i)) ("If [Plaintiffs] do[] not object to the Revised Closing Statement within thirty (30) days after receipt, or accept[] such certificate in

7

writing . . . the Estimated Purchase Price will be adjusted as set forth in [Defendants'] certificate . . . .").]

Regardless of whether the final EBITDA was properly delivered in a certificate, Defendants waived any objections by waiting 30 months after Plaintiffs provided them with the final EBITDA to make an objection. The asset purchase agreement unquestionably shows the parties intended to resolve any dispute over the final EBITDA quickly and definitively. The agreement gave Defendants only 30 days to review the final EBITDA and provide a detailed written objection. [*Id.* at ECF p. 24 (Asset Purchase Agreement Section 4.4(b)).] The parties then had 30 days to negotiate in good faith before they were permitted to refer the dispute to an independent accounting firm. [*Id.*] If Defendants were to choose to exercise their right to refer, they were to do so "as promptly as practicable." [*Id.*] The independent accounting firm, if engaged, would not be permitted to conduct an independent review, but instead would only consider presentations from both Plaintiffs and Defendants, which were limited to only certain records and materials. [*Id.* (cross-referencing the procedure in Asset Purchase Agreement Section 4.3(c)(ii)).] Following this limited review, the findings of the independent accounting firm would be binding and subject only to review for fraud or manifest error. [*Id.*] All of this structure shows the parties intended any disputes over the final EBITDA to be conclusively resolved in—at most—a few months, rather than stretched out over two years.

Further, Defendants do not point to any new information they gained in the 29 months between the expiration of the 30-day window and their belated objection. Nor do they allege they discovered new information leading them to question the final EBITDA during that period. Given that nothing appears to have changed, Defendants' argument that they could not have objected earlier is not persuasive. Irrespective of whether Plaintiffs failed to provide a

8

certificate, the Court is not inclined to keep an asset purchase agreement indefinitely open to attack when the agreement expressly limits disputes over this provision to a few months.

Defendants cite *Enterprise Holdings, Inc. v. Rolen Stockholder Representative, LLC*, C.A. No. 2017-0422-AGB, at *23 (Del. Ch. June 27, 2018), in which the court granted a stay based on similar contract provisions. [Filing No. 60, at ECF p. 5 (citing Filing No. 60-3, at ECF p. 23).] However, the party in that case timely complied with the objection provision in the subject agreement, making it inapposite. *Enterprise Holdings*, C.A. No. 2017-0422-AGB, at *8.

The Court further denies the motion to stay because it would be inefficient to put the entire case on hold to have an accounting firm review the final EBITDA before the Court determines whether the final EBITDA is even an issue in this case. Whether Defendants are prohibited from challenging the final EBITDA is an unresolved question of law requiring interpretation of the agreement. Redirecting all efforts to reviewing the final EBITDA puts the proverbial cart before the horse.

**III.    Conclusion**

As set forth above, the Court grants Defendants' motion to amend their counterclaim [Filing No. 59], and denies Defendants' motion to stay and compel review by an independent accounting firm. [Filing No. 60.] Defendants shall file and serve their amended counterclaim within seven days of the date of this order. The parties shall file a joint motion within 14 days proposing a timeline for any additional discovery related to the amended complaint.

Date: 12/11/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.